## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **SHIRLEY M. JOHNSON,** *et al.*,    ) | |
| ) | |
| **Plaintiffs,**    ) | |
| ) | |
| **v.**    ) | **Case No.: 5:17-cv-2150-LCB** |
| ) | |
| **AIRBUS DEFENSE & SPACE**    ) | |
| **INC.,**    ) | |
| ) | |
| **Defendant.**    ) | |

## MEMORANDUM OPINION

Plaintiffs Shirley M. Johnson, Tenea R. Stoddard, and Jill K. Ranes brought this action against Defendant Airbus Defense and Space, Inc. (ADSI) for breach of contract and sex discrimination they experienced while employed by Defendant. Before the Court are Plaintiffs' Motion to Strike or Disregard Portions of Declaration of Genevieve Findlay (Doc. 35), Defendant Airbus Defense & Space, Inc's Motion to Strike the Affidavit of Dale McElyea Submitted in Opposition to Defendant's Motion for Summary Judgment (Doc. 43), and Defendant's Motion for Summary Judgment (Doc. 25). For the reasons stated below, Plaintiff's Motion to Strike is denied, Defendant's Motion to Strike is granted, and Defendant's Motion for Summary Judgment is granted.

## I.  Plaintiffs' Motion to Strike (Doc. 35)

Plaintiffs move to strike or disregard portions of the declaration of Genevieve Findlay (Doc. 27–3), ADSI's former head of human resources, offered in support of Defendant's motion for summary judgment. (Doc. 35). Plaintiffs contend that Ms. Findlay's declaration is contradicted by her sworn deposition testimony and that the former must therefore be stricken.

In the deposition testimony at issue, Ms. Finley named two women that were eligible for severance packages, but forfeited their rights to a severance package by resigning. (*Id*. at 2–3; Doc. 27–1 at 103–4, 151). The declaration, in contrast, provides that "[s]everance pay was offered to two women and five men because they were either offered a position at AHI of lesser status, lesser pay, or both, or because they were not offered any position at AHI," and that Ms. Findlay "made the decision to offer severance pay" to each female employee because they were "not offered . . . position[s] at AHI." (Doc. 35 at 1–2; Doc 27–3 at 3). Plaintiffs claim that because Defendant relies on the deposition testimony to support the proposition that women and men were treated equally, the putative inconsistency in Findlay's declaration is "misleading." (Doc. 35 at 3). In response, Defendant contends that the deposition testimony and declaration are not "inherently inconsistent." (Doc. 42 at 1).

Plaintiff relies on *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1987) to support its position that this Court should strike part of Ms. Findlay's declaration. (Doc. 35 at 3). Indeed, *Van T. Junkins* holds that a district court may strike a "sham affidavit" if it contradicts previous testimony without giving a valid explanation from a party. 736 F.2d at 656–57. However, the "sham affidavit" rule is far narrower than Plaintiffs acknowledge. While discrepancies in statements may exist, testimony should not be disregarded unless it is "inherently inconsistent" with previous testimony. *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). Further, the "sham affidavit" rule "is applied sparingly because of the harsh effect it may have on a party's case." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) (citing *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007).

Ms. Findlay's declaration and deposition testimony are not inherently inconsistent. Her statement that two women would have been offered severance packages in her deposition and two women were offered severance is not so inherently different as to render her statement a sham. In fact, Ms. Findlay's testimony in her declaration and deposition consistently states that two women were eligible for severance packages. She does not claim that the women accepted the severance, but that it was offered. Essentially, she stated the information about the

severance packages in different ways. Accordingly, Plaintiffs' Motion to Strike or Disregard Portions of Declaration of Genevieve Findlay (Doc. 35) is **DENIED**.

## II.    Defendant's Motion to Strike (Doc. 43).

Defendant has likewise filed a motion to strike. (Doc. 43). Citing Federal Rules of Civil Procedure 37(c), 56(c)(2), 56(c)(4), and 56(e), Defendants move to strike the affidavit of Dale McElyea, ADSI's former Director of Contracts for the Lakota Program, submitted in opposition to summary judgment. (*Id.*). Because Plaintiffs neither named Mr. McElyea as a witness in their Rule 26(a) disclosures nor later supplemented their disclosures to include him, Defendants contend that Plaintiffs may not now rely on his testimony to oppose summary judgment. (*Id.* at 2). Plaintiffs counter that their non-disclosure of Mr. McElyea's identity was "harmless." (Doc. 44). The Court disagrees.

Rule 26(a) generally requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information." Further, when a party has made a disclosure under Rule 26(a), she is required to supplement or correct disclosures. Fed. R. Civ. P. 26(e). Rule 37(c)(1) of the Federal Rules of Civil Procedure penalizes parties who fail to disclose witnesses, as required by Rule 26(a), by proscribing the use of any undisclosed witness's testimony as evidence on a motion. However, the rule provides an exception where "the failure was substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). "In

determining whether an undisclosed witness should be excluded under [Rule 37(c)] courts typically consider 'the explanation for the failure to disclose the witness, the importance of testimony, and the prejudice to the opposing party." *Sharpe v. Glob. Sec. Int'l.*, 766 F. Supp. 2d 1272, 1278-79 (S.D. Ala. 2011) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008). A "party who is alleged to have failed to comply with Rule 26 bears the burden to show that its actions were substantially justified or is harmless." *Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006).

Plaintiffs did not explicitly include Mr. McElyea's name in its disclosures, but they did list "present and former employees of the Defendant with knowledge regarding Plaintiffs' employment." (Doc. 44 at 2). Plaintiffs also claim that Defendant was aware of Mr. McElyea because two Plaintiffs (Johnson and Ranes) testified about him during their respective depositions. (*Id.* at 2-3).

After examining Plaintiffs' explanation for failing to disclose Mr. McElyea's name, the importance of the testimony, and the potential prejudice to Defendant, the disputed affidavit will be stricken. Pursuant to Rule 26, Plaintiffs had a duty to disclose Mr. McElyea's identity and failed to do so. Plaintiffs' failure to disclose was not harmless to Defendant. While Plaintiff argues that Defendant should have known that Mr. McElyea could have been a potential witness, their duty to disclose the affiant's identity was not eliminated, especially once they knew they planned to

elicit testimony from him. Mr. McElyea's testimony supports Plaintiffs' position that he was offered a severance package after Defendant agreed there was no equivalent position for him, but Defendant did not have the opportunity to further inquire about his knowledge of the severance package that he received or his conversations with management. Further, Plaintiffs had a duty to supplement disclosures "in a timely manner [once] [they] learn[ed] that in some material respect the disclosure . . . [was] incomplete or incorrect, and . . the additional or corrective information ha[d] not otherwise been made known to the other part[y] during the discovery process or in writing" Fed. R. Civ. P. 26(e); Plaintiffs did not. Accordingly, Defendant's Motion to Strike is **GRANTED** and Mr. McElyea's affidavit is stricken.

### III. Motion for Summary Judgment (Doc. 25)

#### A. Background

Defendant Airbus Defense & Space, Inc. (ADSI), an aerospace program management facility, employed plaintiffs Shirley Johnson, Tenea Stoddard, and Jill Ranes. (*See* Doc. 4). In 2006, ADSI was awarded a ten-year contract by the U.S. military to deliver light utility "Lakota" helicopters to the Army. (Doc. 26 at 6–7). In March of 2016, as the end of the ten-year term of the Lakota contract drew near, ADSI President Mike Consentino visited the Huntsville facility to hold an "all-hands" meeting to discuss the end of ADSI's contract and the transition of the Lakota program from ADSI to Airbus Helicopter, Inc. (AHI), an affiliated division of

Airbus with offices in Texas and Mississippi. (*Id*.; Doc. 27–3 at 2). With the shuttering of ADSI's Huntsville office, AHI had agreed to absorb as many ADSI employees as it could. (Doc. 27–3 at 2). At the meeting that March, Consentino discussed offering a severance package to anyone not offered a position at AHI, or anyone offered a position that was "substantially different in terms of pay, status, position or location." (*See* Doc. 27–5 at 57–58). Any employee that received an offer not meeting these criteria would not be offered a severance package. (*See* Doc. 27-3). Genevieve Findlay, ADSI's human resources director, determined whether the employees met these standards for severance. (*See id*.).

Plaintiffs Johnson, Stoddard, and Ranes were each initially offered positions at AHI that Defendant considered to be equal in pay, status, and location to their positions at ADSI. (Doc. 27–3 at 3). However, each party had concerns over the terms of employment. (*See* Doc. 27-5 at 98; Doc. 27-6 at 73; Doc. 27-7 at 106). Each offer letter indicated a risk that the new job might require relocating. "The position at the current time will remain in Huntsville. Over the course of 2017 a determination will be made regarding the future working location of this position." (*See* Doc. 27–2 at 108; Doc. 27-6 at 63; Doc. 27-7 at 103). Plaintiff Johnson was not interested in relocating, nor was she satisfied that her benefits would be similar to those she had at ADSI. (Doc. 33 at 26, 28). Johnson was informed by AHI in February 2017 that she would be required to move from Huntsville. (*Id*. at 24). Accordingly, though

Johnson had accepted a position at AHI, she withdrew her acceptance when it became clear that she would be need to relocate. (*Id*.) Because she had rejected the position, Johnson expected to receive a severance package. (Doc. 27–5 at 146).

Similarly, Plaintiff Stoddard was offered a position with AHI that was initially based in Huntsville but the decision to relocate would be made "[o]ver the course of 2017." (Doc. 27–6 at 63). Like Johnson, Stoddard was informed by AHI that her position would not remain in Huntsville, and that the new job would require out-of-state relocation. (Doc. 33 at 28). Although she initially accepted the position (Doc. 27-6 at 75), she rejected the position after she learned she would not be able to remain in Huntsville. (Doc. 27-6 at 87). Because Stoddard believed that she met one of the triggers to receive severance, she reasoned that she should have been entitled to a severance package. (Doc. 27–6 at 96).

Finally, Plaintiff Ranes was also offered a position with AHI. (Doc. 27-7 at 106). Ranes questioned whether the benefits that she had accrued at ADSI, like vacation time, would be similar to her new job at AHI. (*See* Doc. 27–7 at 112–113). Ranes's offer letter also indicated that her position was initially based in Huntsville, but could potentially be relocated. (Doc. 27–7 at 106). Ranes was later told that there was not a contracts manager position (her former role at ADSI), nor would she able to stay in Huntsville. (Doc. 27–7 at 92). Like the other two Plaintiffs, Ranes

withdrew her position and expected a severance package because she believed her position was not equivalent and she would have to relocate. (*Id*. at 120).

After declining the positions at AHI, Plaintiffs continued to work for ADSI until their terms ended. (*See* Doc. 27-5 at 134; Doc. 27-6 at 43; Doc. 27-7 at 16). However, Plaintiffs later learned that male employees received severance packages because they were either not offered positions at AHI or they were offered positions that were not equal in pay, status, or would require them to relocate. (Doc. 33 at 31, 32). Because no woman received a severance package, Plaintiffs believe that the motivation for denying severance was based on sex. (*See id.* at 29).[1]

Plaintiffs Shirley Johnson and Tenea Stoddard filed suit based on illegal sex discrimination on December 21, 2017. (Doc. 1). The next month, Plaintiff Jill Ranes was added to the complaint, as was the breach-of-contract count. (Doc. 4). The Court has subject-matter jurisdiction over Plaintiffs' sex discrimination claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' breach-of-contract claim under 28 U.S.C. § 1367(a). (*Id*. at 2).

### B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

---

[1] Beyond the allegedly discriminatory severance policy, Plaintiffs allege instances of sexist conduct, such as a male employee referencing a pajama party for women, comments about "bitchiness and cattiness," and women being required to serve men at a work event. (*See* Doc. 27-5 at 139, 142; Doc. 27-7 at 141).

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

## C. Disparate Treatment Claim

Defendant moves for summary judgment on Plaintiffs' sex discrimination claims on several grounds. Defendant alleges that Plaintiffs: (1) cannot show that they were subject to an adverse employment action; (2) cannot make a prima facie sex discrimination case; (3) cannot overcome Defendant's legitimate non-discriminatory reasons for refusing severance; and (4) cannot show that the reasons given are pretext for discrimination. (Doc. 26 at 34–40).

Plaintiffs claim that they have created a genuine dispute of material fact that they were subject to sex discrimination because men received severance packages and women employed by Defendant did not. (Doc. 33 at 35). As Plaintiffs do not

have direct evidence of discrimination, they must attempt to prove their case with circumstantial evidence. *See Burke-Fowler v. Orange Cty. Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Parties alleging discrimination with circumstantial evidence are subject to the *McDonnell Douglas* burden-shifting framework. *Ezell v. Wynn*, 802 F.3d 1217, 1226 (11th Cir. 2015). To establish a *prima facie* sex-discrimination claim under this framework, a plaintiff "must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999), *abrogated by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019)).

If a plaintiff satisfies the elements of a *prima facie* case, the defendant "has the burden of producing 'legitimate, non-discriminatory reasons for its employment action." *Id*. Once the defendant meets this burden, the plaintiff "has the ultimate burden of proving the reason to be pretext for unlawful discrimination." *Id*.

For an act to constitute an adverse employment action, there must be "serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012). For example, an adverse employment action is a "significant change in employment status such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Webb-Edwards v. Orange Cty. Sherriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Plaintiffs claim that the denial of severance is an adverse employment action because "severance is an employee benefit that, if offered by an employer, must be offered and paid on a non-discriminatory basis." (Doc. 33 at 34). While the denial of severance does not fit neatly into the standards set forth above, construing the facts most favorably to Plaintiffs, a denial of severance could be considered a material change to the terms and conditions of employment. However, even if a denial of severance is an adverse employment action, Plaintiffs still must establish a *prima facie* case for sex discrimination for their claim to move forward. *See Joe's Stone Crab*, 220 F.3d at 1286.

For a plaintiff to demonstrate that she has been discriminated against because of a protected characteristic, she can introduce evidence that she was treated differently than a comparator, an individual "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). While there is no set formula to determine who may be considered a proper comparator, the Court will consider whether the similarly situated comparator has "engaged in the same basic conduct (or misconduct) as the plaintiff," *id.* at 1227

(citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992); has "been subject to the same employment policy, guideline, or rule as the plaintiff," *id.* (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999); has ordinarily "been under the jurisdiction of the same supervisor as the plaintiff," *id.* at 1227–28 (citing *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)); and has "share[d] the plaintiff's employment or disciplinary history," *id*. at 1228 (citing *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) at 1228–29. Ultimately, "a plaintiff and her comparator[] 'must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.'" *Id*. (quoting *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 209 (2015)).

However, if a plaintiff does not have a comparator for her claim, it is not automatically fatal to a prima facie case. A prima facie case can also be made by showing a "'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id*. at 1220, n.6 (citing *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011); *see also Alvarez v. Royal Atl. Dev*., *Inc*., 610 F.3d 1253, 1264 (11th Cir. 2010) ("The methods of presenting a prima facie case are flexible and depend on the particular situation.")

For comparators, Plaintiffs argue that the men who received severance packages from the Defendant are similarly situated to them in all material respects. (Doc. 33 at 36). Specifically, Plaintiffs claim that no woman was offered severance.

(*Id.*). Notwithstanding Ms. Findlay's declaration that two women were eligible for severance before they resigned from the company, Plaintiffs posit that each male employee was subject to the "same 3 criteria for severance" and that "the decision maker had the same supervisory authority over all of them." (*Id.* at 38). Indeed, testimony from Genevieve Findlay provides that each employee was told the same scenarios that would trigger severance pay. (*See* Doc. 27–1 at 74). However, any male employees must not be "reasonably distinguished" from Plaintiffs to successfully be considered an adequate comparator. *See Lewis*, 918 F.3d at 1228–29.

Thus, any adequate comparator must (i) have been offered an equivalent position with AHI (as determined by Defendant), (ii) have rejected the offer, and (iii) have then been offered a severance package. But Plaintiffs have presented no evidence to create a genuine dispute of material fact that any other male employees meet all three criteria.

Plaintiffs argue in their response to summary judgment that they are similarly situated to "the 4 men [that] received severance offers based on the 3 equally applicable criteria." (Doc. 33 at 36). However, Plaintiffs have not presented adequate evidence that creates a genuine dispute of material fact that, under Defendant's criteria, Defendant offered the men positions, the men rejected it, and were still offered severance. These conclusions are seemingly based on Plaintiffs own

understanding of the severance agreements, not the actual criteria Defendant followed. (*See* Doc. 27–5 at 98; 27-6 at 26).

Absent a valid comparator, Plaintiffs can still make a *prima facie* case with a "'convincing mosaic' of circumstantial evidence" warranting an inference of intentional discrimination. *Lewis*, 918 F.3d at 1220 n.6. However, Plaintiffs cannot do that. Plaintiffs' claims about sex discrimination include allegations of asking female employees to wear pajamas and having discussions at work about "bitchiness and cattiness." *See* (Doc. 27–5 at 141–42). Other claims about sexism include Plaintiff Johnson recalling an incident when John Burke, program manager, told her she and her husband were not wholesome because they did not have children. (Doc. 27-5 at 137). Plaintiff Ranes states that Burke mocked women crying. (Doc. 27-7 at 140). She and Plaintiff Stoddard also remember Burke hosting a dinner where female employees served food and cleaned up. (Doc. 27-6 at 22; Doc. 27-7 at 141). While these incidents are certainly inappropriate, they do not aggregate to the requisite "convincing mosaic" standard. Taken together, no reasonable factfinder could conclude that these instances present a "convincing mosaic" of circumstantial evidence a *prima facie* discrimination case.

Regardless, even if Plaintiffs had presented a prima facie case, they cannot overcome Defendant's legitimate, non-discriminatory reasons for denying them a severance package. To satisfy this burden to present a non-discriminatory reason,

"the employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Tex. Dept. of Comm. Affairs v. Burdine* 450 U.S. 248, 257 (1981)). Defendant articulated that its policy for providing severance to employees was subject to three triggers: change in location, change in status, or change in location. (Doc. 27–3 at 1). While Plaintiffs do not believe that this criterion was applied fairly to them, Defendant outlines why the men received severance packages and Plaintiffs did not. (*See id.* at 3). For example, Genevieve Findlay noted that the male employees that received severance packages because they were not offered positions at AHI or the position at AHI was "materially lesser status and pay." (*Id.*). Additionally, Findlay details that some men were not offered severance packages because they were "offered a lateral position at AHI." (*Id.*). Because Defendant presented this evidence, it has met its burden of showing a legitimate, non-discriminatory reason for not giving Plaintiffs severance packages.

Finally, Plaintiff has not created a genuine dispute of material fact that Defendant's denial of severance was pretext for sex discrimination. To show a defendant's reason was pretextual, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find

them unworthy of credence." *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarrelling with the wisdom of that reason.")

Plaintiffs contend that Defendant's explanation of their severance denial was pretextual because "[Plaintiffs] were not offered jobs with the same pay, same job title, or same geography." (Doc. 33 at 39). Plaintiffs also argue that "Defendant failed to follow its own policy" regarding distributing severance. (*Id.*). However, the decision of what was comparable pay, position, or geography was not for Plaintiffs' discretion. The employer determined the triggers for severance, and the employees' beliefs about what situation triggered severance do not matter concerning pretext. *See Alvarez*, 610 F.3d at 1266 ("[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on the reality as it exists outside of the decision maker's head.") Further, whether Plaintiffs believe that the severance policy was flawed, they have not created a genuine dispute of material fact that this policy that was outlined was not consistently applied to Plaintiffs. Accordingly, because no reasonable juror could conclude Plaintiffs experienced

discriminatory treatment, Defendant's motion for summary judgment as to this claim is **GRANTED**.

### D. Breach of Contract Claim[2]

Plaintiffs also assert a state law claim against Defendant for breach of contract. Plaintiffs claim that "[t]here was an agreement between the [Plaintiffs] for Defendant[] to provide its employees a severance package if there was not a position available for them at AHI and substantially-similar in terms of status/position, remuneration, or location." (Doc. 4 at 9). They claim that Defendant did not perform under the contract and "refused to rectify the breach" by offering them severance packages. (*Id.* at 10). Defendant argues that Plaintiffs cannot succeed on this claim because: (1) Plaintiffs were at-will employees; (2) No contract existed between the parties; and (3) If a contract did exist, Defendant did not breach any contract. (Doc. 41 at 7-12).

An express or implied-in-fact contract is formed in Alabama when there is "an offer, an acceptance, consideration, and mutual assent to terms essential to the contract." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (citing *Steiger v. Huntsville City Bd. of Educ.*, 653 So. 2d 975, 978 (Ala. 1995). "[E]lements of a

---

[2] While the parties did not argue about supplemental jurisdiction in their briefs, after analyzing the *Gibbs* factors, the Court chooses to exercise supplemental jurisdiction regarding Plaintiffs breach of contract claim. Considering the factors of judicial economy, convenience, fairness, and comity, the Court finds that it is appropriate to exercise supplemental jurisdiction. This case has been pending since 2017 and discovery has already been conducted. Parties would have to restart this process nearly three years later if this issue were removed to state court.

breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (*citing Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002).

A "contract must express all terms essential to the transaction with definiteness sufficient to enable a court to enforce the parties' agreement." *Macon Cty. Greyhound Park*, *Inc.*, *v. Knowles*, 39 So. 3d 100, 108 (Ala. 2009). *See also Drummond Co., Inc. v. Walter Indus. Inc.*, 962 So. 2d 753, 774 (Ala. 2006) ("[I]f a court cannot discern the intentions of the parties to a contract because the contract is so vague and indefinite, the contract is void on the ground of uncertainty.") A party attempting to establish a breach-of-contract claim is "required to prove, among other things, the existence of a valid contract." *Southland Bank v. A & A Drywall Supply Co.*, Inc., 21 So. 3d 1196, 1203 (Ala. 2008).

As to the alleged breach-of-contract, there is undisputed testimony that Plaintiffs all understood their employment to be at-will. Plaintiffs received an initial offer letter specifically stating that their employment was at-will providing as follows:

> This offer is for at-will employment. This means that you or the Company may terminate the employment relationship at any time for any reason, with or without cause or notice. The Company is not offering you employment for any definite period of time…All terms

and conditions are subject to change without notice at the Company's discretion.

 (*See* Doc. 27-5 at 85; Doc. 27-6 at 55; Doc. 27-7 at 74).  Plaintiffs do not appear to dispute or contest the language in their offer letters. Additionally, Plaintiffs Johnson and Stoddard signed a "Company Policy and Procedure Agreement Form" that provided:

> [N]o manager or representative of The Company, other than the Chief Executive Officer, has any authority to make any agreement contrary to the foregoing [that the employment was at-will], and that any contract to the contrary must be in writing and signed by the Chief Executive Officer and me or his designee.

(*See* Doc. 27-5 at 86; Doc. 27-6 at 75). However, Plaintiffs argue that the manager's statements regarding severance "formed an enforceable oral contract separate and apart from their status as 'employees at-will.'" (Doc. 33 at 34).

Plaintiffs cite *Reynolds* in support of this contention. (*Id*. at 32). The facts in *Reynolds* are indeed similar: a supervisor who apparently represented the defendant company made a statement to a group of employees that, if the plant were sold, the employees would be entitled to certain benefits. 825 So. 2d at 102-03. The Court then noted the elements of such a contract. *Id*. at 105. However, the Court in *Reynolds* was reviewing a trial court's decision to certify a class. *Id*. at 108. It was not reviewing any decision about whether a contract existed. The trial court in *Reynolds* had concluded, among other things, that although the individual plaintiffs may have had different interpretations of the manager's statements, the issues in the

breach-of-contract claims still satisfied the "predominance" requirement of class certification because, the trial court held, "the terms of the alleged contract were certain and unambiguous." *Id*. at 107. In reviewing that finding *de novo*, the Court held that the alleged contract was not clear and unambiguous because each of the employees could have had a different interpretation of the manager's statement. *Id*. The Court noted that it had "previously rejected class certification in a breach-of-contract action where the terms of the contract were not clear or where individual testimony would be necessary on the contract claims." *Id*. Therefore, the actual holding of the Supreme Court in *Reynolds* was that the trial court erred in finding the language of the "alleged" contract to be unambiguous, and, consequently, that the contract claim was predominant for purposes of class certification. *Id*. at 108.

Plaintiffs assert that, in *Reynolds*, the Alabama Supreme Court upheld the trial court's finding that "an executive's oral promise in a meeting of all employees that the sale of the plant would be 'treated as a plant closing for benefit purposes' [was] a binding promise to provide severance to the employees." (Doc. 33 at 32). But, the question in *Reynolds* was not whether the manager's statement created an implied contract. As noted, the issue was whether the breach-of-contract claim was predominant for purposes of class certification. *Reynolds*, 825 So. 2d at 106. Although the Court noted the elements of a contract, there was no analysis as to

whether the statement in question formed a binding contract. In fact, the specific finding of the trial court under review was the following:

> "Wagner stated that the sale of the plant would be treated as a 'plant closing' for benefit purposes. *Thus, the terms of the alleged contract are certain and unambiguous.* The Court finds that should the Plaintiffs prevail, they will be due the benefits that they would have received had the Alloys Plant actually been closed or shut down rather than sold. It is not necessary that every member of the class know the specific benefits due in a plant closing situation. Rather, it is sufficient that they were promised a specific type of treatment."

*Id*. at 106 (emphasis in original). The Supreme Court was not reviewing whether a contract existed, indeed, the trial court even called it an "alleged contract." *See id.* at 107 ("First, the <u>alleged offer</u> in this case was an oral statement that we have determined was ambiguous…") The Court was assuming that a contract existed for purposes of that appeal. The Court in *Reynolds* was not presented with the question of whether the manager's statements constituted a binding implied contract, and Plaintiffs' contention that *Reynolds* supports their argument is without merit.

Even if *Reynolds* could be construed to hold as the Plaintiffs allege, it is distinguishable from the facts in this case. As noted, the Plaintiffs do not dispute that they were given an offer letter explaining that they were at-will employees and specifically stating that "The company is not offering you employment for any definite period of time. All terms and conditions are subject to change without notice at the Company's discretion." *See* (Doc. 27-6 at 56). There was nothing in *Reynolds* to suggest that that any similar agreement had been signed by the parties.

Plaintiffs also attempt to challenge the Defendant's argument by noting their reliance on *Hoffman-La Roche, Inc., v. Campbell*, 512 So. 2d 725 (Ala. 1987). Defendant cited *Hoffman* for the elements of an employment contract that is not at-will. (Doc. 26 at 32). They also cited it for the proposition that, generally, employee handbooks are not contracts. *Id*. The Court in *Reynolds* held that *Hoffman* was distinguishable because the alleged offer in *Hoffman* was written and was not made in contemplation of the business closing. *Reynolds*, 825 So. 2d at 107. Thus, the differences noted by the Court in *Reynolds* have nothing to do with the Defendant's purpose for citing *Hoffman*.

Finally, Plaintiffs also cite *Livernois v. Med. Disposables, Inc*., 837 F.2d 1018, 1019 (11th Cir. 1988), for the proposition that "even as an employee-at-will under Georgia law, [a] plaintiff employee could seek payment of benefits [he] had accrued under the oral contract but had not been paid, including severance." (Doc. 33 at 36). However, the second paragraph of *Livernois* shows that the facts are distinguishable: "When Livernois accepted employment, the parties had an oral agreement as to the terms of the contract. There was never a written contract between the parties. Although the parties disagree on what the terms of the contract were, they agree that the oral agreement contemplated full-time, <u>permanent employment for an indefinite period</u>." *Livernois*, 837 F.2d at 1019 (emphasis added). It is undisputed that is not the case here.

In sum, Plaintiffs argue that the manager's statements regarding severance packages constituted "a valid, enforceable contract separate and apart from any employee-at-will status." (Doc. 33 at 34). The Plaintiffs cite *Reynolds* in support of that proposition, but that is not what *Reynolds* held. Similarly, the other authority cited in support of Plaintiffs' argument is readily distinguishable from the present case.

Accordingly, Plaintiffs have cited no authority for the proposition that the manager's statements regarding severance, even when construed in the light most favorable to them, constituted a binding contract. Plaintiffs have not overcome the fact that, subject to the terms of their at-will employee status, Defendant could change "[a]ll terms and conditions" of their employment without notice at its discretion. (*See* Doc. 27-7 at 74). Further, pursuant to the Company Policy and Procedure Agreement Form, any contract contrary to their status must be made in writing and signed by the CEO. (*See* Doc. 27-6 at 56). Accordingly, no reasonable factfinder could conclude Defendant breached any contract with Plaintiffs, as no contract existed between the parties. Therefore, summary judgment as to this claim is **GRANTED**.

## IV.    CONCLUSION

Accordingly, because Plaintiffs have failed to create a genuine issue of material fact with respect to an essential element of each of their claims, summary

judgment is appropriate as a matter of law. IT IS ORDERED Defendant's Motion for Summary Judgment (Doc. 25) is GRANTED. An order consistent with the Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 6, 2020.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE